JUNG FORWARDING CO. ET AL. *v.* UNITED STATES

No. 7968.—

Entry No. 763549–1/2, etc.

(Decided March 9, 1951)

*Sharretts, Hillis & Paley* for Jung Forwarding Co.; *Sharretts, Hillis, Mansbach & Paley* for F. L. Kraemer & Co.; (*Howard C. Carter* of counsel).

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

LAWRENCE, Judge: From an examination of the record before the court it is clear that the question presented by the appeals for reappraisement listed in schedule "A," attached hereto and made a part hereof, is limited in scope.

The importations involved consist of various types of motorcycles, shipped from England to the United States.

Item number WD/CO in reappraisement 184856–A was appraised at a unit value of £72-0-0, plus £4-7-0 for packing, on the basis of foreign value, as defined in section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), as amended by the Customs Administrative Act of 1938. All of the other items covered by the appeals for reappraisement listed in schedule "A" and known as models RE, G, J, and J-2 were appraised on the basis of cost of production as defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)).

There is no controversy between the parties as to the bases of appraisement above referred to, the only issue being the amount of the foreign dutiable value to be applied to item WD/CO, *supra,* and the amount of the cost of production which should correctly apply to the various other types of motorcycles. The court is, therefore, not faced with the necessity of determining the various elements of value which are not challenged. *United States* v. *Fritzsche Bros., Inc.,* 35 C. C. P. A. (Customs) 60, C. A. D. 371.

Although two witnesses testified on behalf of the plaintiffs, their testimony, being general in nature, affords little aid in the determination of the specific issues here presented.

Three documentary exhibits were also presented for the court's consideration. Plaintiffs' exhibit 1 consists of an affidavit, duly authenticated, executed by V. T. Mountford, general sales manager for the Enfield Cycle Co., Ltd., of Redditch, England, manufacturer and shipper of the imported merchandise. Defendant's exhibits A and B are photostatic copies of reports of Treasury Representative Charles Schlager dated London, England, January 8, 1947, and October 15, 1947, respectively.

Directing attention first to the motorcycles referred to as item number WD/CO in reappraisement 184856–A, which were exported from England on April 26, 1947, plaintiffs have offered no affirmative proof of a foreign value for this item. In their brief, they seek to overcome the value found by the appraiser by relying upon the statement contained in defendant's exhibit A to the following effect:

Effective October 1, 1946, the price on the model WD/CO machine was increased to £65 inclusive of speedometer (¾/0d). Numerous sales were noted in this manufacturer's sales records always conforming to the above prices.

Plaintiffs therefore contend that the proper foreign value of the motorcycles described as item number WD/CO should be £65, plus £4–7–0 for packing, or a total of £69–7–0. ·

It is noted, however, that whereas the quotation of the £65 base price was a freely offered price in the home market effective October 1, 1946, referred to in the Treasury representative's report of January 8, 1947 (exhibit A, supra), the date of exportation of the controverted item was more than 3 months subsequent to this showing of value. No evidence has been offered to indicate that the price remained firm during the interim. In fact, it would appear from the record before me that the contrary is true. In answer to the printed question at the bottom of the consular invoice covering the merchandise in issue, reading "Is such or similar merchandise offered or sold in the home market for home consumption?," the Enfield Cycle Co., Ltd., shipper, has inserted the word "Yes." And the pertinent commercial invoice bears the notation "English Trade Price Ex-Works, £72.0.0.," which is the basic unit value found by the appraiser. On cross-examination of plaintiffs' witness, Watling, defendant's counsel, after drawing attention to the above-quoted notations, propounded the following question to the witness:

Now, do you understand from that, that this particular model, Model WD/CO, was sold for home consumption in England at £72 Sterling at the time of exportation?

and the answer was: "I think so. I think that is a fair conclusion." It is clear, therefore, that the plaintiffs have failed in their proof that the value contended for is "the market value or the price *at the time of exportation* of such merchandise to the United States" within the definition of foreign value in section 402 (c), as amended, *supra.* [Italics supplied.]

With regard to the importations of models RE, G, J, and J–2 motorcycles covered by the appeals for reappraisement in issue, the affidavit of V. T. Mountford, general sales manager for the Enfield Cycle Co., Ltd., manufacturer of the present importations, sets forth in tabulated form the various items constituting statutory cost of production (section 402 (f), *supra*) for the different models during the following three periods: November 1, 1946, to March 31, 1947; April 1, 1947, to March 31, 1948; and April 1, 1948, to August 31, 1948. The affidavit concludes with the following statement:

9. That he has no knowledge of the profit made by other manufacturers of motorcycles as such information is highly confidential.

It would appear, therefore, that the amounts listed in the "Profit" column of the above tabulations are the profits actually realized by

the manufacturer of the instant merchandise, rather than such profits as would be in accordance with the requirements of section 402 (f) (4) of the Tariff Act of 1930, namely—

An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) *equal to the profit which ordinarily is added*, in the case of merchandise of the same general character as the particular merchandise under consideration, *by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.* [Italics supplied.]

Note *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, to the effect that the general expenses and usual profit of each manufacturer of imported merchandise are not the criterion for a determination of cost of production. In that case, the court stated:

* * * where there is other evidence in the record, or available to the parties with respect to profits ordinarily made by other manufacturers of merchandise of the same general character as that imported, in the country of exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit should be determined according to the weight of all the evidence bearing upon the subject.

In the present instance, the only other evidence in support of plaintiffs' contention is the testimony of their witness, Watling, who for some 30 years has been chief executive official of the British Cycle and Motorcycle Manufacturers and Traders Union, Ltd., a national organization in England of manufacturers of cycles and motorcycles and allied accessories, to which practically all the manufacturers in the country of exportation belonged. Through his personal association with manufacturers and attendance at meetings of the Union where there was free discussion of costs and profits, Mr. Watling stated that the profit normally realized by manufacturers of motorcycles of the same general character as those manufactured by the Enfield Cycle Co., Ltd., was 10 per centum.

On cross-examination, this witness testified as follows:

X Q. Would you say that the profit, normal profit, of 10 per cent, continued throughout that period of time [his 30-year association with the industry]?— A. It is certain that the 10 per cent profit is a profit which every competent manufacturer will continuously wish to have, but I suppose there have been good times and bad in every industry.

X Q. And by that you mean what, that the profit was greater and sometimes less than 10 per cent?—A. It might possibly have been in bad years but that is the basis upon which we work.

* * * * * * *

X Q. What was it in 1946, if you know?—A. 1946, I shouldn't like to answer that without examining my records.

X Q. What was it in 1947?—A. I should say that probably 1947 was somewhat a better year than 1946, but again I cannot give you a definite reply. I haven't got any of those records here now.

* * * * * * *

X Q. And, did you base your conclusions exclusively upon data presented to you by these 30 odd manufacturers that you mentioned?—A. Yes.

\* \* \* \* \* \* \*

X Q. Then, did you see the figures themselves of these concerns?—A. In the most of the cases, I have seen the figures, yes.

X Q. The books?—A. No, no. I have told you so that I have not seen the actual books. What I have relied upon is the tabulated statements which have been produced and which were produced may I say so without any knowledge that this examination would take place, and therefore it hasn't been done with the object of providing information for this special inquiry.

X Q. But the information that was available to you was information which, concerning which you were not the author?—A. No, that is right.

X Q. And, concerning which you did not see the books, papers, and records other than the data that was given to you by somebody in these 30 odd concerns?—A. Yes, sir.

X Q. And, your conclusions are based upon that?—A. Yes.

This evidence being of a secondary and general nature is insufficient to meet the burden of proof placed upon plaintiffs to satisfy the requirements of the statute.

Section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501), as amended, provided, *inter alia*, that—

(a) \* \* \* The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

On the record presented, the plaintiffs herein have failed to overcome by satisfactory evidence the presumption of correctness attaching to the values found by the appraiser.

As a concluding consideration, attention is directed to the contention made in defendant's brief with regard to the motorcycles indicated as model "RE" in reappraisements 184854–A, 184855–A, and 184856–A, that an error occurred in the calculation of the item of profits which would result in a slight increase in the unit cost of production values found by the appraiser.

In support of its contention defendant relies on supplementary exhibit A attached to exhibit B. After a detailed calculation of materials, labor, work supervision, speedometer cost, and overhead, which is reflected in said exhibit, the item of profit is arrived at by deducting the total of the costs of production from the home selling price in the country of exportation. Apparently this procedure in determining the item of profit is predicated upon the statement of Treasury Representative Schlager, contained in said exhibit B, to the following effect:

\* \* \* The profit is represented in the difference between the sales price and cost totals.

It is to be noted, however, that said Treasury representative's report is based solely on the regular books of account and other records

of the Enfield Cycle Co., Ltd., shipper of the imported merchandise. The endeavor of defendant herein to show an error in profit as to the "RE" items of motorcycles is therefore based on a showing of the profit realized by this particular manufacturer rather than "the profit which ordinarily is added, * * * by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind." (Section 402 (f) (4), *supra*.) Defendant, in its endeavor to establish the item of profit, offers evidence which was deemed inadequate when similar proof of profit was offered by plaintiffs.

The contention of defendant being considered unsupported, the presumption of correctness of the values found by the appraiser has not been disturbed.

Upon a full consideration of the record before me, I find as facts—

1. The merchandise covered by the four appeals for a reappraisement enumerated in schedule "A," attached to and made a part hereof, consists of motorcycles exported from England.

2. The motorcycles indicated as "WD/CO" in reappraisement 184856–A were appraised at a unit value of £72–0–0, plus £4–7–0 for packing, on the basis of foreign value.

3. The respective parties have agreed that foreign value is the proper statutory basis for determining the value of the merchandise referred to in finding of fact No. 2, *supra.*

4. The motorcycles indicated as "RE," "J," "G," and "J–2" were appraised at the following unit values:

| Reap. No. | Model No. | Cost of production per unit, including speedometer, packed |
|---|---|---|
| 184854–A | RE | £47–15–6 |
| | J | £100–18–7 |
| | G | £93–2–6 |
| 184855–A<br>184856–A | RE | £49–14–8 |
| | G | £101–11–10 |
| | J | £109–8–0 |
| 185714–A | J–2 | £112–8–6 |

5. That the respective parties have agreed that there is no foreign, export, or United States value of the merchandise referred to in finding of fact No. 4, *supra*, and that cost of production is the proper statutory basis for determining the value of said merchandise.

6. The plaintiffs have failed in their burden of proving unit values for the above items different from those found by the appraiser.

7. The requirements of section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)) not having been complied with, the contentions of defendant in its brief as to error in calculation of profit applicable to the motorcycles known as model "RE" are untenable.

Therefore, I conclude as matters of law—

1. The motorcycles indicated as "WD/CO" in reappraisement 184856–A are properly dutiable on the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), as amended by the Customs Administrative Act of 1938, and that such value is the appraised value thereof.

2. The motorcycles indicated as "RE," "J," "G," and "J–2" covered by the appeals for a reappraisement listed in schedule "A," attached to and made a part hereof, are properly dutiable on the basis of cost of production, as that value is defined in section 402 (f) of said act (19 U. S. C. § 1402 (f)), and that such value is the appraised value in each instance.

Judgment will issue accordingly.